UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>         Plaintiff,<br><br>   v.<br><br>KEITH WALKER, et al.,<br><br>         Defendants. | Case No.  12-cv-01447-WHO<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 48 |

Defendant Keith Walker owned Rollie French, Inc. ("RFI") when it filed for bankruptcy in 2005. He also owned defendants Keith Walker Trust dated March 17, 1999, the Keith Walker Trust dated May 17, 1999, and the Real Estate Leasing Business operated by the Keith Walker Trust. After RFI terminated its collective bargaining agreements with plaintiff Carpenters Pension Trust Fund for Northern California (the "Pension Fund") in 2008, the Pension Fund notified RFI that it had been assessed with withdrawal liability in the amount of $1,726,467 for employees' benefits that had already vested under the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001–1461 (1982). RFI did not seek to arbitrate its obligations under ERISA. The issues I must decide on the Pension Fund's motion for summary judgment are whether the defendants waived all defenses by failing to initiate arbitration under ERISA's procedures and whether the defendants may be considered a "control group" under the statute. They did waive their defenses, they are a "control group," and I will GRANT the Pension Fund's motion.

**FACTUAL BACKGROUND**

There are no material undisputed facts in this case. The Pension Fund is an employee benefit plan and a multiemployer plan as defined under ERISA that primarily covers employees in

the building and construction industry. *See* 29 U.S.C. §§ 1002(2)(A), 1002(37)(A), 1132(d). Dkt. No. 1 ¶ 2. Defendant Keith Walker is an individual and the sole owner of RFI, a non-party to this action. RFI was an employer under sections 3(5) and 515 of ERISA, and was bound by collective bargaining agreements with the Pension Fund which required it to make contributions to the Pension Fund for covered work performed by its employees. *See* 29 U.S.C. §§ 1002(5), 1145; Rich Decl., Ex. 5; Compl. ¶¶ 5-8 (detailing agreements).

In December 2005, RFI filed for bankruptcy. Mason Decl., Ex A at 65:17-25. In 2008, RFI terminated its collective bargaining agreements with the Pension Fund and made contributions until June 30, 2008, when the termination became effective. Rich Decl., Ex 4. Resp. Nos. 39, 43.

When an employer withdraws from a multiemployer pension plan, such as the one administered by the Pension Fund, ERISA requires a withdrawing employer to compensate a pension plan for benefits that have already vested with the employees at the time of the employer's withdrawal, commonly referred to as "withdrawal liability." 29 U.S.C. § 1361 *et seq*. On December 7, 2009, the Pension Fund notified RFI that it had been assessed withdrawal liability in the amount of $1,726,467. Mason Decl., Ex. F. The Pension Fund advised RFI that it had the option of challenging the withdrawal liability by requesting review of the assessment or timely demanding arbitration. *Id*.

RFI responded in a letter dated December 9, 2009, stating that RFI owed no withdrawal liability payments because "RFI has not performed work in the jurisdiction of the collective bargaining agreement since February 1, 2006. Therefore, no withdrawal has yet occurred." Mason Decl., Ex. G. RFI did not request review or initiate arbitration. It has not made any withdrawal liability payments to date.

Keith Walker is the sole proprietor of defendant Keith Walker Trust, which owns and operates defendant Real Estate Leasing Business. At the time RFI terminated its collective bargaining agreements with the Pension Fund, Keith Walker was also the sole owner of two other companies: K&M Industries, Inc. ("K&M"), and D&B Engineered Applications, Inc. ("D&B"). Defendant Real Estate Leasing Business leased property to RFI and currently leases property to

K&M. Rich Decl., Ex. 1 at 26:1-5, 30:18-25; Ex. 2 at 34:12-35:6.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I. ERISA'S STATUTORY WITHDRAWAL LIABILITY SCHEME

Pension plans, including those like the Pension Fund here, are federally regulated pursuant to ERISA, 29 U.S.C. § 1001 *et seq*. The MPPAA, 29 U.S.C. §§ 1381–1453, amended ERISA "to allow plans to impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans." *Carpenters Pension Trust Fund v. Underground Constr. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994). "Prior to the enactment of the MPPAA, employers could withdraw from pension plans without paying their share of the plans' unfunded vested benefit liability." *Woodward Sand Co., Inc. v. W. Conf. Teamsters Pension Trust Fund*, 789 F.2d 691, 694 (9th Cir. 1986) (citation omitted). "The employers could simply cease making

3

1  pension contributions (e.g., by ceasing covered business) and avoid any responsibility for the
2  actual, but unfunded, liabilities of the plans." *Id*. "The other employers remaining in the plan
3  were forced either to assume these additional liabilities or to withdraw, resulting in unfairness to
4  the remaining employers or insolvency of the plan." *Id*. (citation omitted).

"To alleviate these problems, Congress established a system for computing and assessing the liability of employers who withdraw from pension plans." *Id*. (citing 29 U.S.C. § 1361 et seq.). "This system is designed to make employers pay their share of the real cost of pensions, by paying a share of the difference between the assets already contributed and the vested benefit liability." *Id*. (citation omitted). "This 'withdrawal liability' is assessed against the employer to 'ensure that employees and their beneficiaries [are not] deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.'" *Id*. Given the remedial purposes of ERISA and the MPPAA, their provisions should be liberally construed to protect plan participants. *See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 175 (3d Cir. 2002) (citation omitted); *Teamsters Pension Trust Fund–Bd. of Trs. of W. Conference v. Allyn Transp. Co.*, 832 F.2d 505, 507 (9th Cir. 1987) (citation omitted).

29 U.S.C. § 1399 sets forth the procedure regarding the calculation and notification of a withdrawing employer's withdrawal liability. As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor must notify the employer of the amount owed and provides a schedule of payments. 29 U.S.C. § 1399(b)(1). The employer is entitled, within ninety days of such notice, to ask the sponsor to review any specific matter relating to the determination of the employer's withdrawal liability and schedule of payments, to identify any inaccuracies, or to provide additional relevant information. 29 U.S.C. § 1399(b)(2)(A). After a reasonable review of matters raised, the plan sponsor then must notify the employer of its decision. 29 U.S.C. § 1399(b)(2)(B).

29 U.S.C. § 1401 provides a procedure in the event of a dispute. Section 1401(a)(1) states:
> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration

4

> proceeding within a 60-day period after the earlier of (A) the date of notification to the employer under section 4219(b)(2)(B) [29 U.S.C. § 1399(b)(2)(B)], or (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) [29 U.S.C. § 1399(b)(2)(A)].

Section 1401(b)(1) goes on to state:

> If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 4219(b)(1) [29 U.S.C. § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

An employer that fails to initiate arbitration in a timely manner waives defenses and objections that must have been raised in arbitration. *See Bd. of Trs Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 376 (4th Cir. 2006) ("Because [the defendant] failed to pursue arbitration, as required by 29 U.S.C. § 1401(a)(1), the issues it now seeks to raise for the first time in federal court about its withdrawal liability are deemed waived."); *Bd. of Trs of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Kero Leasing Corp.*, 377 F.3d 288, 294 n.5 (3d Cir. 2004) ("An employer will waive its statutory rights to dispute aspects of the Fund's liability determination where arbitration is not demanded within the time period prescribed by the statute."); *Allyn Transp. Co.*, 832 F.2d at 505–06 (9th Cir. 1987) ("the statute states unambiguously that '[a]ny dispute between an employer and the plan sponsor . . . concerning a determination made under sections 1381 through 1399 . . . shall be resolved through arbitration' (29 U.S.C. § 1401(a)(1)), and Congress clearly intended exactly what those words import.").

"Generally, courts have allowed an exception to the statutory directive only where an employer makes a facial constitutional attack or shows that irreparable injury will result from being forced to make the interim payments. The burden of qualifying for this exception, however, is extremely high . . . ." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 120 (4th Cir. 1991) (citations omitted) (citing *Connors v. Brady–Cline Coal Co.*, 668 F. Supp. 5, 8 (D. D.C. 1987) (enforcing interim withdrawal payments despite employer's claim that making interim payments would force it to cease operations)).

## II. THE DEFENDANTS' CLAIM THAT NO WITHDRAWAL OCCURRED IS BARRED BY ERISA'S ARBITRATION PROCEDURES

The defendants claim that because RFI ceased doing business in 2006, it falls under the "building and construction industry exception" to withdrawal liability under 29 U.S.C. 1383(b). Section 1383(b) states in pertinent part:

> (b) Building and construction industry
>
> (1) Notwithstanding subsection (a) of this section, in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2)
>
> . . .
>
> (2) A withdrawal occurs under this paragraph if --
>
>   (A) an employer ceases to have an obligation to contribute under the plan, and
>   (B) the employer—
>     (i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or
>     (ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

29 U.S.C. § 1381(b).

The Pension Fund argues that it is entitled to summary judgment because the defendants have waived any defenses to withdrawal liability by failing to initiate arbitration under ERISA section 4221(a)(1). 29 U.S.C. § 1401(a)(1). The Pension Fund is correct. The "building and construction industry exception" provision in section 1381(b) falls within the range of provisions that are required, pursuant to 29 U.S.C. § 1401, to be resolved by arbitration. *See* 29 U.S.C. § 1401(a)(1)(A) (providing that "*[a]ny dispute* between an employer and the plan sponsor of a multiemployer plan concerning a determination made *under sections 1381 through 1399 of this title shall be resolved through arbitration*") (emphasis added). "Several circuits have indicated that disputes as to whether and when an employer has withdrawn from a plan are subject to arbitration under MPPAA." *Allyn Transp. Co.*, 832 F.2d at 506. "[C]ourts uniformly hold [a section 1383(b)] defense to have been waived when it was not first arbitrated . . . ." *Pension Trust Fund for Operating Engineers v. Dalecon, Inc.*, No. 11-cv-02851 LB, 2014 WL 1007274, at *15

1  (N.D. Cal. Mar. 12, 2014) (citing cases).  RFI and the defendants did not initiate arbitration.  That

2  failure is fatal to their claim.

### III.  THE UNDISPUTED FACTS DEMONSTRATE THAT THE DEFENDANTS ARE IN A CONTROL GROUP

The Pension Fund asserts that the defendants are liable for RFI's withdrawal liability because they are under "common control."  Br. 15.  ERISA's definition of an "employer" encompasses an entity making contributions to a pension plan, and all "trades and businesses" that are under "common control" along with that entity.  29 U.S.C.A. § 1301(b)(1).  Each member of a control group is jointly and severally liable for withdrawal liability generated by any member's activities.  *See, e.g., Board of Trustees of Western Teamsters Pension Trust Fund v. LaFrenz*, 837 F.2d 892, 893 (9th Cir. 1988).  Notice to one entity in the control group is sufficient notice to all members.  *Allyn Transp. Co.*, 832 F.2d at 506 ("because all trades or businesses under common control 'shall be treated . . . as a single employer,' notice to one should be notice to all.") (citing *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3rd Cir.1986) (quoting 29 U.S.C. § 1301(b)(1)).

Common control for purposes of Section 1301(b) is defined in 26 C.F.R. 1.414(c)-2 and 1.414(c)-4.  Common control requires that the same group of people or organizations (i) own a controlling interest in each business alleged to be under common control, and (ii) the same group of people or organizations are in effective control of each business alleged to be under common control.  26 C.F.R. 1.414(c)-2(a), (c).  Section 1.414(c)-2(a) defines common control as "any group of trades or businesses which is . . . a brother-sister group of trades or businesses under common control as defined in paragraph (c) of this section."  26 C.F.R. 1.414(c)-2(a).  Section 1.414(c)–2(c) defines a brother-sister group as "two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization."  26 C.F.R. 1.414(c)-2(c).

The undisputed facts on the record demonstrate that RFI and the defendants are commonly

United States District Court
Northern District of California

controlled.[1]  It is undisputed that RFI, both of the named defendant trusts, and the Real Estate Leasing Corporation are 100% owned and controlled by defendant Keith Walker.  It is also undisputed that Keith Walker was the sole owner of RFI and the defendants when RFI terminated its CBAs with the Pension Plan in 2009.  The Real Estate Leasing Business leased property to RFI and K&M, both which are solely owned by Keith Walker.  This activity qualifies as a "trade or business" under ERISA.  *See Lafrenz*, 837 F.2d at 894 (leasing property to a commonly controlled corporation is "trade or business" under section 1301(b)(1)).

On these undisputed facts, the defendants and RFI are under common control for purposes of 29 U.S.C. 1301(b)(1), and are therefore jointly and severally liable for the withdrawal liability incurred by RFI.  *See, e.g., Lafrenz*, 837 F.2d 892, 895 (corporation's ERISA withdrawal liability could be imputed to owners of commonly controlled unincorporated truck leasing operation); *Bd. of Trustees of W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson Inc.*, 830 F.2d 1009, 1015 (9th Cir. 1987) (principals in joint venture held personally liable for joint venturer's withdrawal liability); *Auto. Indus. Pension Trust Fund v. Fitzpatrick Chevrolet Inc.*, 833 F. Supp. 2d 1162, 1166-1167 (N.D. Cal. 2011) (employer and landlord's identical ownership in corporations alleged to be in common control sufficient to state claim that landlord was jointly and severally liable for employer's withdrawal liability under ERISA).

## IV. DAMAGES

The Pension Fund is entitled to damages under ERISA § 4301(b) (29 U.S.C. § 1451(b)), which provides that, "[i]n any action under this section to compel an employer to pay withdrawal

---

[1] Some judges have held that disputes over whether entities are part of a control group are waived if not raised in arbitration.  *See, e.g. Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 123 (4th Cir. 1991) ("as long as a withdrawing entity was a part of the control group of an employer subject to the MPPAA at some point in time . . . the arbitration procedure must be followed."); *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241, 1250 (3d Cir. 1987) (defendant "simply did nothing, gambling that it would not later be found to be a member of a controlled group with the withdrawn employer . . . By doing nothing, [the defendant] lost the possibility of review and arbitration under MPPAA.") (citations and alterations omitted).  Whether the defendants waived their ability to raise this issue in federal court is moot in light of the undisputed facts, which establish that they are under common control.

liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 515 [29 U.S.C. § 1145])." The following damages are available where an employer fails to pay required contributions: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages as provided by the plan (not to exceed 20% of the unpaid contributions); and (4) reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2).

The Pension Fund requests $1,726,476 in assessed withdrawal liability, together with interest, liquidated damages, and reasonable attorneys' fees. Br. 25-25. The Pension Fund may recover these types of damages on their claim for unpaid withdrawal liability. *See, e.g., Dalecon*, 2014 WL 1007274, at *16-17 (granting plaintiffs withdrawal liability, interest, liquidated damages, and attorneys' fees and costs).

## V. LEAVE TO AMEND

At the hearing on April 16, 2014, the defendants did not argue against the Pension Fund's motion but did urge that judgment should not include parties not named in the complaint. The Pension Fund intends to litigate the responsibility of K&M and D&B as well, either by amending the complaint to add them as defendants or by filing a new lawsuit and relate it to this one. Amending the complaint is the least expensive and quickest way to address the issue. *See* FED. R. CIV. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."). The defendants did not oppose that procedure but reserved their right to object to the proposed amendment once it is filed. Accordingly, leave to amend is GRANTED because it is in the interest of justice. FED. R. CIV. P. 15(a)(2) ("a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.").

## CONCLUSION

For the reasons above, the Pension Fund's motion for summary judgment is GRANTED against defendants Keith Walker, the Keith Walker Trust dated March 17, 1999, the Keith Walker Trust dated May 17, 1999, and the Real Estate Leasing Business operated by the Keith Walker

1  Trust.  Should the Pension Fund wish to amend its complaint, it shall do so within 30 days from
2  the date of this order.
3          **IT IS SO ORDERED**.
4  Dated: April 17, 2014



WILLIAM H. ORRICK
United States District Judge

10